## KEMP, administrator, *v.* HAMMOCK.

1. While the answer to the petition was somewhat vague and indefinite in its allegations as to the consideration for the transfer of the property to which the defendant asserts title as against the claims of the administrator, the plaintiff in the present suit, it sufficiently shows a

parol transfer of the property, and a consideration and performance by the defendant, to withstand the plaintiff's general demurrer.

2. The testimony of a witness, that the wife of the alleged grantor had said that the defendant's grantor told her that if the defendant would "take care of him his lifetime and her lifetime, the balance was his," was objectionable as being hearsay.

3. Where one claims a parol gift of land and the vesting of title in himself on account of valuable and permanent improvements placed thereon, he must show valuable improvements made upon the faith of the gift during the donor's life, in order to establish an equitable title in himself.

4. One who has title to land and sees another who is in bona fide possession thereof place valuable improvements thereon, without giving notice of his title, is not thereby subsequently estopped from asserting his title.

FEBRUARY 21, 1916.

Complaint for land. Before Judge Larsen. Houston superior court. December 21, 1914.

W. B. Kemp, as administrator of the estate of J. A. Hammock, brought suit, in March, 1912, against Jenks Hammock to recover a described tract of land as a part of that estate. Plaintiff's intestate died in May, 1895. At his death he left a widow and one daughter, Mrs. Jennie Kemp, wife of W. B. Kemp. Mrs. Kemp died in August, 1905, and Mrs. J. A. Hammock died in 1909. The widow and daughter named above were the only heirs left by J. A. Hammock. Jenks Hammock was the son of Mrs. Kemp and the grandson of J. A. Hammock, and was 18 years old at the time of the death of the latter. He claims title to the land "under a parol gift by J. A. Hammock, defendant's grandfather, and he alleges that he took possession of said land under said parol gift in good faith, and that said gift was coupled with a charge upon defendant of taking care of the wife of the grantor, who was the grandmother of defendant, for and during her life.

. . . For further answer, defendant says that defendant's mother was the daughter of the said J. A. Hammock, and was married to W. B. Kemp, who is the plaintiff in this case, about the year 1893, and that she was the only child of the said J. A. Hammock, and that after her marriage to the said Kemp defendant's grandfather divided his property, giving to defendant's mother the sum of $900.00, which she invested in the land known as the Kemp place, and about the same time giving to defendant the place sued for in this case; that defendant from his earliest

childhood lived with his said grandfather, J. A. Hammock, who
adopted him as his son and regarded him as one of his heirs, and
that it was well understood by the plaintiff, W. B. Kemp, defend-
ant's mother, and the entire family that this land was given to
defendant, it being understood that defendant assumed the care
and support of his grandmother after the death of the said J. A.
Hammock, defendant's grandfather; that possession of this land
was turned over to defendant under the gift previous to the
death of his grandfather, and that the defendant in good faith
undertook to cultivate and improve the land and to support his
grandmother and to care for his grandfather during their lives,
and that after the death of defendant's grandfather he continued to
live upon said place with his grandmother, and faithfully to carry
out the charge assumed by him as to her support until her death in
December, 1909; that he cared for and supported her up to the
time of her death, and that his said grandmother always recog-
nized the land as his, knowing as she did that her husband, the
said J. A. Hammock, had turned it over to defendant under a
gift, and that his grandmother always insisted that he should
return this property for taxes in his own name and not in hers,
and that the legal title to the land was in defendant and not in
her; that his said grandmother knew of the improvements being
placed upon said place by defendant, and that these improve-
ments were being placed upon it with the understanding that the
land was his under the aforesaid gift of his grandfather, and
she repeatedly recognized this fact in conversation with de-
fendant and others; that the said W. B. Kemp, the plaintiff in
this case, has been, since the death of defendant's grandfather, in
full possession of knowledge of all these facts, and has never
until very recently raised any question as to defendant's full right
and title to said land, he well knowing that defendant had fully
discharged all his obligations to his grandfather and grandmother
which grew out of the gift to him of this land, and the said W. B.
Kemp never until recently made any claim that he or his daughter,
who is defendant's sister, had any interest in this land.    Defend-
ant says further that in good faith he accepted said land with the
charge as aforesaid, went into possession of the same at once, and
has been in continuous possession ever since, and has, as he has
been able, made valuable improvements upon the same from time

to time, and that he has spent large sums of money upon the improvement of the house, repairing and remodeling the same, repaired and improved and enlarged the outhouses and improved the storehouse, that he has paid taxes upon the same since the year 1895, and insurance for twelve years on the buildings, has fertilized and improved the land so that its productivity has been largely increased and the land itself rendered much more valuable; that the value of the improvements thus' put upon said place since defendant went into possession amounts' to $2,000 or other large sum, all of which he put upon the said place in good faith, . claiming the land as his own under the aforesaid gift of his said grandfather." Defendant, by amendment, set out in detail the improvements made upon the land sued for, and 'attached an itemized, statement of them and the dates at which they were made; and from that statement it appears that the valuable improvements were made upon the premises after the death of J. A. Hammock. The defendant also alleged that both his mother and grandmother knew of his placing improvements on the land, and knew that they were being put there upon the faith of the parol gift to defendant, and neither of them objected or asserted any claim of ownership; and that they are now estopped from asserting title to the lands. Plaintiff demurred to the answer as amended, on the ground that it appears that all the improvements alleged to have been made by the defendant were made after the death of J. A. Hammock, and that the amended answer sets up no defense to the original suit, either legal or equitable. This demurrer was overruled, and the plaintiff excepted. Upon the trial the jury returned a verdict for the defendant, and the plaintiff's motion for a new trial was overruled.

*Hardeman, Jones, Park & Johnston, C. L. Shepard,* and *Harry S. Strozier,* for plaintiff.

*L. D. Moore* and *J. B. Jackson,* for defendant.

BECK, J. (After stating the foregoing facts.)

1. The court did not err in overruling the general demurrer to the defendant's amended answer. While it is alleged in the answer that the defendant went into possession of the lands in controversy under a parol gift, and his amendment shows that the alleged improvements were made upon the lands subsequently to the death of J. A. Hammock, and therefore would not have sufficed

to complete an equitable title in him under the alleged gift, nevertheless, when all of the allegations of the answer are considered, notwithstanding the . defendant designated the transfer to him of the land as a gift, the answer alleges that there was a transfer of the property to the defendant for a valuable consideration,—that is, for the support of the grantor and his wife for and during their lives; and these allegations of a transfer to him for a consideration, while somewhat vague and indefinite, are sufficient to withstand a general · demurrer, and these allegations of consideration, in connection with the allegations of performance upon the part of the defendant, show a title in the latter.

2.　The testimony of a witness, that the wife of the alleged grantor had said that the defendant's grantor told her that if the defendant would "take care of him his lifetime and her lifetime, the balance was his," was objectionable as being. hearsay, and should have been excluded upon such· objection duly made.

3.　Complaint is made of the following ' charge of the court: "I charge you, if you believe from the evidence in this case that the defendant went into the possession of the land in dispute before or on the death of J. A. Hammock, and made valuable improvements in good faith, believing the land belonged to him, and if you further believe from the evidence the widow of J. A. Hammock and Mrs. Kemp saw and knew the defendant was making improvements upon the faith of his ownership, and further believe they made no objection, or failed to put the defendant upon notice that they claimed an interest in the land, then I charge you the widow of J. A. Hammock and Mrs. Kemp would be estopped from afterwards claiming an interest in the land, and you would be authorized to find in favor of the defendant, provided you believe from the evidence the widow of J. A. Hammock and Mrs. Kemp constituted all the heirs at law of J. A. Hammock at the time of his death." The exception to this charge is well taken. In the first place, the valuable improvements claimed by the defendant to have been made upon the land were made, as shown by the itemized statement of the improvements, subsequently to the death of the alleged donor, and therefore could not render the gift complete. Thompson v. Ray, 92 Ga. 285 ·(18 S. E. 59).

4.　Further, in the charge just quoted the jury were erroneously instructed that if the heirs of ·J. A. Hammock saw the defendant

46

making valuable improvements upon the land and failed to put him upon notice that they claimed an interest therein, they would afterwards be estopped from asserting an interest in the land. This is not the law. The mere fact that one owning land sees another putting valuable improvements thereon, although the owner may know that the other is doing so in good faith, believing himself to have title to the land, will not estop the owner from asserting his claim. *Georgia Railroad Co.* v. *Hamilton,* 59 *Ga.* 171 (3) ; St. Louis Smelting & Refining Co. *v.* Green, 13 Fed. 208. If the defendant placed the improvements while bona fide in possession of the land under a claim of title, he may set off the value of the permanent improvements thus bona fide placed by him, and have a judgment therefor for the amount of the excess value of such improvements over the mesne profits, in case the jury upon the final trial render a verdict in favor of the plaintiff for the land. Civil Code, § 5587.

The errors which we have pointed out in this charge infect certain other portions of the charge complained of; but it is not necessary to specifically deal with them, in view of what we have said in reference to the charge last quoted. Inasmuch as the case is remanded for another trial upon other grounds, we will not undertake to pass upon the question as to the sufficiency of the evidence to show an agreement to transfer the title to the land in quesion to the defendant upon the consideration that the latter would support the plaintiff's intestate and the wife of the latter during their lives. Except as pointed out above, there were no errors in the rulings or charges of the court complained of.

*Judgment reversed. All the Justices concur.*